25CA1822 Marriage of Schmidt 08-06-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 25CA1822
El Paso County District Court No. 23DR31104
Honorable Amy Cullen Cano, Judge

---

In re the Marriage of

Brittany Michelle Schmidt,

Appellee,

and

Ryan David Schmidt,

Appellant.

---

JUDGMENT AFFIRMED
AND APPEAL DISMISSED IN PART

Division III
Opinion by JUDGE JOHNSON
Kuhn and Martinez*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 6, 2026

---

Heather M. Mitchell, Monument, Colorado, for Appellee

Colorado Legal Group, Morgan Minser, Denver, Colorado, for Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2025.

¶ 1     In this dissolution of marriage case between Brittany Michelle Schmidt (wife) and Ryan David Schmidt (husband), husband appeals portions of the permanent orders concerning parenting time, decision-making responsibility, division of marital property relating to debt and tax matters, payment of wife's attorney fees, the award of maintenance and child support, and the court's findings as to husband's income and that wife was not voluntarily underemployed.  Husband also appeals (1) the district court's order denying his request for a continuance and (2) a magistrate's post-dissolution order reducing wife's attorney fees to a sum certain.  We conclude that the court did not err relating to husband's appeal of the permanent orders.  And we conclude that we lack jurisdiction over the magistrate's post-dissolution attorney fee order.  Therefore, we affirm the district court's judgment and dismiss the appeal with respect to the magistrate's order.

## I.    Background

¶ 2     Wife and husband were married in December 2020 and had two children during the marriage.  Wife petitioned for dissolution of the marriage in June 2023.

1

¶ 3    Shortly after filing the petition, wife sought attorney fees pursuant to section 14-10-119, C.R.S. 2025, arguing that, because of the gross disparity in income between the parties, husband should be ordered to pay wife's attorney fees and advance a lump sum payment of $10,000 to wife's attorney.  In August 2023, a magistrate set an evidentiary hearing.  After the hearing in September 2023, the magistrate granted wife's request for attorney fees (September 2023 order) and ordered that when husband made a payment to his attorney, "he shall also make a corresponding payment to [wife] for the same amount."  Less than one month later, husband's counsel filed a motion to withdraw pursuant to husband's request, which the district court granted.

¶ 4    A permanent orders hearing was set in February 2024.  After wife presented her case, husband made a statement that the

district court construed as a request for a continuance, which it denied.[1]

¶ 5     Following the hearing, the district court made oral findings of fact and conclusions of law and then entered written orders confirming its oral ruling (permanent orders).

¶ 6     Husband appealed the permanent orders and the order denying his request for a continuance. A division of this court dismissed the appeal without prejudice for lack of a final appealable order because the court's permanent orders had not reduced the magistrate's September 2023 attorney fee order to a sum certain. *In re Marriage of Schmidt*, (Colo. App. No. 24CA0931, Apr. 4, 2025) (unpublished order). Thereafter, wife filed a motion to enter an attorney fees award and, based on the timeframe provided for in the permanent orders, requested attorney fees in the amount of $8,869. On August 5, 2025, a magistrate granted wife's motion and

---

[1] Although the transcript from the permanent orders hearing was not certified as part of the record in this appeal, we take judicial notice of it from the prior appeal in which it was designated. *See In re Marriage of Schmidt*, (Colo. App. No. 24CA0931, Apr. 4, 2025) (unpublished order); *see also Sebastian Holdings, Inc. v. Johansson*, 2025 COA 60, ¶ 30 n.9 (taking judicial notice of court records in a related proceeding under CRE 201).

awarded the requested amount to be paid by husband (August 2025 order). Husband appeals.

¶ 7    On appeal husband raises numerous issues, most of which are unpreserved. We first address the issues that we deem preserved or that could not be preserved based on the court's ruling.

## II.    Request for a Continuance

¶ 8    Husband argues that the district court erred by denying his request for a continuance of the permanent orders hearing. We disagree.

### A.    Standard of Review

¶ 9    Whether to grant or deny a continuance is within the sound discretion of the district court, and its decision will not be disturbed absent a clear abuse of discretion. *In re Marriage of Rodrick*, 176 P.3d 806, 814 (Colo. App. 2007). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 23. The moving party must also show that the denial of the continuance resulted in actual prejudice. *In Interest of Spohr*, 2019 COA 171, ¶ 32.

## B.    Analysis

¶ 10    At the permanent orders hearing after wife had presented her case, husband made a statement questioning the fairness of the proceedings because he had "not been allowed to obtain counsel." He stated, "I don't know how to do this" and "I have things that are being asked of me that I don't know how to do."  The district court construed husband's statement as a request for a continuance to obtain counsel.

¶ 11    The district court denied husband's request as untimely, reasoning that (1) the issue could have been addressed at the pretrial readiness conference or a prior status conference, but husband failed to appear at both; and (2) husband appeared at the permanent orders hearing late and made his request after wife had presented her case.  The court also found it "suspect" that husband had an attorney but terminated them "almost immediately after" the magistrate ordered husband to pay wife's attorney fees concurrently with his own.  We agree with the district court's ruling for three reasons.

¶ 12    First, as the district court found — and we agree — husband could have made a timely request for a continuance before the

permanent orders hearing, either by filing a motion or raising the issue at two hearings that he did not attend held on December 21, 2023, and January 19, 2024. He provides no account of why he did not seek a continuance earlier, nor does he provide an explanation as to why he did not attend those hearings.

¶ 13　Second, the court's finding that husband's withdrawal of his attorney was "suspect" and done almost immediately after the magistrate's temporary attorney fee award is supported by the record. Husband says that he "was forced to permit his previous counsel to withdraw due to extreme financial burden." But he provides no financial specifics below or on appeal to support the assertion made in the motion to withdraw that he was "request[ing] counsel to withdraw."

¶ 14　Also, the magistrate entered temporary orders on September 26, 2025, and less than three weeks later, husband requested his counsel to withdraw; therefore, the court's suspicion of husband's actions based on their timing was well founded. Most importantly, however, even assuming husband was under "extreme financial burden," he concedes that his parents offered to pay for an attorney for him, but he declined to have them do so. He did not explain at

6

the permanent orders hearing or on appeal his reason for rejecting their offer.

¶ 15     Third and finally, husband has not demonstrated actual prejudice. The district court assisted husband during the hearing to the extent it was appropriate. The district court was prepared to move forward with the hearing as a default hearing but allowed husband to appear late. The court also consistently asked if husband wanted to object to wife's exhibits, explained to husband how cross-examination worked, gave him the opportunity to question wife's testimony, and asked him if there was anything he would like to say regarding the decisions the court had to make. Except in a cursory fashion, husband does not explain how having an attorney would have made a difference at the permanent orders hearings. For example, he does not explain how his monthly income was imputed incorrectly by the court or what evidence through an attorney he would have presented to support that his income was different and, thus, he might have an inability to pay maintenance. Likewise, in that same vein, he does not explain how any attorney would have presented evidence that he should have more parenting time. Under the circumstances, therefore, we

cannot say that the district court abused its discretion by denying the continuance.

## III. Permanent Orders

¶ 16     Husband raises numerous issues with the permanent orders, but most of them are unpreserved, so we do not address the merits. As a subset of the unpreserved contentions, however, he raises two issues that he did not need to preserve: (1) the court drew an unspecified negative inference that was not requested by wife, and (2) the court erred by failing to make best interests of the child findings. We address the merits of those two issues.

### A. Negative Inference

¶ 17     Husband contends that the court erred by drawing a negative inference against him for "his lack of compliance with discovery and disclosure requirements." We disagree.

#### 1. Standard of Review

¶ 18     We review a district court's decision to draw an adverse inference for an abuse of discretion. *Aloi v. Union Pac. R.R. Corp.*, 129 P.3d 999, 1002 (Colo. 2006). We will not disturb the district court's "imposition of an adverse inference unless the sanction is manifestly arbitrary, unreasonable, or unfair." *Id.*

## 2. Analysis

¶ 19   Husband contends that wife did not ask for a negative inference, so it was an abuse of discretion for the court to draw one without first providing him notice. Because wife did not make a request, husband could not have timely objected; thus, we will review the merits of this issue. *In re Marriage of Herold*, 2021 COA 16, ¶ 7 (reviewing a court's sua sponte grant of retroactive temporary maintenance because the husband had no opportunity to object); *Rinker v. Colina-Lee*, 2019 COA 45, ¶ 26 (holding that, "where, as here, the [district] court rules sua sponte on an issue, the merits of its ruling are subject to review on appeal, whether timely objections were made or not").

¶ 20   Relying on *In re Marriage of Sgarlatti*, 801 P.2d 18 (Colo. App. 1990), the district court drew an adverse inference against husband. Husband concedes that a district court has the discretion to do so. But he asserts that the facts here are distinguishable from *Sgarlatti* because his failure to provide financial and other disclosures was not his fault, as he was forced to allow his counsel to withdraw.

¶ 21    Under C.R.C.P. 16.2(e)(5), the court may sanction a party under C.R.C.P. 16.2(j) when the party does not timely provide disclosures, which includes the information identified in Form 35.1 of the Appendix to Chapters 1 to 17A of the Colorado Rules of Civil Procedure, such as monthly income, debts, and expenses.

¶ 22    Although the court never mentioned any specific negative inference, it asserted in the permanent orders that the negative inference supported some of its findings, though it did not delineate which ones.  Thus, we perceive that the negative inference drawn against husband may have influenced the court's findings and rulings that

- wife's income was $3,466.67 per month and husband's income was $10,190.97 per month;

- husband was to pay maintenance in the amount of $1,497.29 per month for eleven months and child support in the amount of $2,531.74 per month until the children reach the age of majority; and

- husband must pay the remaining 2022 tax return to wife, wife could claim the children for the 2023 tax year, and each year thereafter the parties shall split who claims the

10

children, with husband claiming one child and wife claiming the other.

¶ 23 We conclude that the district court did not abuse its discretion by drawing a negative inference against husband with respect to these monetary considerations. While it is true that the court did not provide advance notice of its ruling, husband was well aware that he had not complied with discovery obligations given his excuse was that he did not have counsel and so he was unaware of his obligations. But that excuse does not relieve him of the duty to comply with the rules of civil procedure, which, as we mentioned above, authorize the district court to impose sanctions against a noncompliant party. *Adams v. Sagee*, 2017 COA 133, ¶ 10 ("[P]ro se parties must comply with procedural rules to the same extent as parties represented by attorneys.").

¶ 24 It is true that when husband had counsel, he filed a sworn financial affidavit that indicated his monthly income was $7,174.90. Wife's counsel filed a sworn financial affidavit attesting that husband's monthly income was $10,000. Later at the pretrial conference, though, wife's counsel indicated that husband had not complied with discovery or Rule 16.2 disclosures, suggesting that

she had not received updated financial information from husband. At the permanent orders hearing, wife's counsel asked wife what information she based husband's $10,190.97 monthly income on, and she testified it was from their joint tax returns. Husband did not provide any argument at the hearing or on appeal that wife's evidence of his income was in error.

¶ 25 The court had discretion to weigh the conflicting information about husband's income and draw a negative inference that his lack of disclosures could mean he was concealing additional income. *See Sgarlatti*, 801 P.2d at 19; *see also In re Marriage of Yates*, 148 P.3d 304, 311 (Colo. App. 2006) (upholding an order imputing income based on the only evidence available when the party's financial disclosures were "atrocious"); *In re Marriage of Tooker*, 2019 COA 83, ¶ 31 (the district court has discretion to draw its own conclusions and inferences from the conflicting evidence). And because the court broadly found that husband was not credible and that wife was credible, it is difficult to ascertain how its findings would have been any different without the unspecified negative inference. Thus, we perceive no error.

## B. Best Interests of the Child Standard

¶ 26    Husband asserts that, as part of the court's rulings involving parenting time and decision-making responsibility, the court failed to make best interests of the child findings. Case law indicates that a district court need not make detailed findings on all the best interests of the child factors listed in section 14-10-124(1.5), C.R.S. 2025, "so long as there is some indication in the record that the pertinent factors were considered." *People in Interest of A.M.K.*, 68 P.3d 563, 565-66 (Colo. App. 2003). We acknowledge that the district court's written order did not include any best interests of the child findings, nor did it make reference to incorporating its oral findings into its written order. But an appellate court may rely on the district court's implicit findings and affirm a judgment on any grounds supported by the record. *See Johnson v. Toohey*, 2021 COA 43M, ¶ 7. In this case, the overall record supports the court's implicit best interests of the child findings.

### 1. Parenting Time

¶ 27    Husband contends that, in making its parenting time decision, the district court failed to make findings as required by section

14-10-129(1)(a)(I), C.R.S. 2025. We reject this contention for two reasons.

¶ 28    First, husband relies on an incorrect legal theory. Temporary orders are not viewed the same as permanent orders, do not grant parenting time rights, and are not subject to modification. *In re Marriage of Fickling*, 100 P.3d 571, 573 (Colo. App. 2004). Only permanent orders grant parenting time rights and are subject to modification. *Id.*

¶ 29    An initial determination of parenting time is established in permanent orders pursuant to section 14-10-124(1.5)(a). Under this section, when determining a child's best interests for parenting time, the district court "shall consider all relevant factors," which include, among other things, the parent's wishes; the child's interaction with their parents; each parent's ability "to encourage the sharing of love, affection, and contact" between them and the child; and "[t]he ability of each party to place the needs of the child ahead of his or her own needs." § 14-10-124(1.5)(a).

¶ 30    Second, after hearing the testimony and reviewing the evidence, the district court found wife's testimony credible, while also finding that husband's was not. At the permanent orders

14

hearing, wife requested that the district court continue the magistrate's temporary orders that husband have parenting time every other weekend. She testified that it "would be healthy for the children" if they had a "primary parent bring them to school and pick them up reliably" and to avoid "unexpectedness." She also testified that husband's job "requires him to be on-call" and his schedule is inconsistent.

¶ 31  The district court also heard testimony from wife's family member and her neighbor. This testimony, along with wife's, addressed several of the factors in section 14-10-124(1.5)(a), including

- wife's wishes that husband have parenting time every other weekend;

- how attentive wife is to the children and their needs compared to husband, who is not as attentive; and

- each party's ability to prioritize the children.

¶ 32  Husband did not advance any argument for his preferred parenting time schedule, or why parenting time should be different from that in the temporary orders. In the testimony provided, husband stated that he has been consistent with the time he has

had with his children, but when wife does not adhere to the schedule, it presents a financial burden for him. Husband also emphasized the lack of time he has because he works seventy hours per week.

¶ 33 The court stated that "[i]t has been pretty one-sided as far as evidence" and that it did not have any testimony contrary to wife's requests. In its oral ruling, the court considered the parties' positions, acknowledging husband's concerns about wife's adherence to the schedule. The court explained that, while the parties can agree to temporary changes in parenting time, husband does not have to care for the children outside the scope of the order, unless he wants to, so that this does not need to affect his work schedule.

¶ 34 While the district court did not use talismanic language in its ruling about the factors, it was presented with and considered evidence and testimony sufficient to satisfy the statutory standards. And the court's credibility determinations support that, by rejecting husband's testimony, it implicitly adopted wife's evidence involving the children's emotional well-being and care. *See Sims v. Indus. Claim Appeals Off.*, 797 P.2d 777, 780 (Colo. App. 1990) (declining

to disturb the district court's implicit rejection of petitioner's testimony); *see also In re Marriage of Nelson*, 2012 COA 205, ¶ 41 (upholding the district court's implicit conclusions based on its explicit findings); *Tooker,* ¶ 31 (inferences and conclusions drawn from conflicting evidence are for the district court to resolve). Because the district court's decision is supported by the record, we conclude that the court did not abuse its discretion by awarding husband parenting time every other weekend. *See In re Marriage of Collins*, 2023 COA 116M, ¶ 14.

### 2. Decision-Making Responsibility

¶ 35 Husband also contends that, in awarding wife tie-breaking authority, the district court failed to make the findings required by section 14-10-124(1.5)(b). We disagree.

¶ 36 Under this section, when determining a child's best interests for decision-making, the district court must consider "all relevant factors," *id.*, including, among other things, "[c]redible evidence of the ability of the parties to cooperate and to make decisions jointly." § 14-10-124(1.5)(b)(I).

¶ 37 Similar to the parenting time issue, we acknowledge that the district court did not explicitly refer to the statutory factors, but the

record supports the court's decision to award wife tie-breaking authority.

¶ 38 At the permanent orders hearing, wife testified that she would prefer to make decisions jointly with husband, but he frequently does not respond to her queries. Accordingly, wife requested that she "have final say in case he decides he's not going to participate in the conversation as per the past six months." Again, husband did not advance any argument for his preferences regarding decision-making authority, nor did he object to wife's request or provide contrary evidence refuting wife's assertion that he failed to respond to wife's queries on parenting issues; as a result, there was no conflicting request for the court to resolve. *People in Interest of A.V.*, 2018 COA 138M, ¶ 35 (affirming the district court's order where the evidence supported the court's decision and the opposing party did not offer any rebuttal evidence). Because the district court's decision to award wife tie-breaking authority is supported by the record, we conclude that the court did not abuse its discretion.

C. Unpreserved Contentions

¶ 39 Husband contends that the district court erred by (1) awarding wife tie-breaking authority for decision-making responsibility;

(2) awarding husband parenting time every other weekend;

(3) assigning the remaining marital debt to husband; (4) awarding wife the remainder of the 2022 tax refund and permitting wife to claim both children for the 2023 tax year; (5) calculating wife's income; (6) awarding wife child support and maintenance; (7) finding that wife was not voluntarily underemployed; and (8) upholding the magistrate's temporary attorney fee award.

¶ 40 The basic thrust of his arguments on all these points is that the court abused its discretion by denying his continuance so he could obtain counsel, and that, with counsel, he could have made better arguments and presented evidence. We acknowledge that husband made a statement before the district court; however, he did not enter any objections or offer any testimony on the merits of any of these issues, so there is nothing for us to review. We have already addressed and rejected his request for continuance. We have also rejected his contentions that the court erred by drawing an unspecified negative inference against him and failing to make the best interests of the child findings. As a result, we view these issues to be unpreserved and, therefore, we will not review the remainder of them. *In re Marriage of Salby*, 126 P.3d 291, 297

(Colo. App. 2005) (declining to review issues not raised before the trial court).

## IV. Review of the Magistrate's Order

¶ 41     Husband requests that we review and vacate the magistrate's August 2025 order reducing to a sum certain wife's attorney fees. Because we do not have jurisdiction over this matter, we dismiss this portion of husband's appeal.

¶ 42     Any magistrate order entered in a proceeding that did not require the consent of the parties must first be reviewed by the district court before this court acquires jurisdiction to review. C.R.M. 7(a).[2]  Whether an order has been entered with or without the parties' consent depends upon whether consent is required by rules or statutes investing the magistrate with authority to act. *Bryan v. Neet*, 85 P.3d 556, 557 (Colo. App. 2003).  If a party does

---

[2] We note that the Colorado Rules for Magistrates (C.R.M.) changed significantly, effective for orders issued on or after January 2, 2026. *See In re Marriage of Carey*, 2026 COA 3, ¶ 9 n.4 (noting that under the new C.R.M. 7, "there are no longer different avenues for appeal to this court depending on whether the matter was one that required the consent of the parties"); *see also* Rule Change 2025(18), Colorado Rules for Magistrates (Amended and Adopted by the Court En Banc, Sep. 4, 2025), https://perma.cc/S7P6-9RVS. For purposes of our analysis here, we rely on the magistrate rules in effect at the time the August 2025 order was issued.

not timely seek the district court's review of a magistrate's order, "the order or judgment of the magistrate shall become the order or judgment of the district court." C.R.M. 7(a)(12) (2025). We may not review a magistrate order "unless a timely petition for review has been filed and decided by a reviewing court." C.R.M. 7(a)(11) (2025). A magistrate may enter an order awarding a party its attorney fees without consent of the parties. *In re Marriage of Stockman*, 251 P.3d 541, 542 (Colo. App. 2010).

¶ 43 Husband never sought district court review of the August 2025 order. Therefore, we lack jurisdiction to review the order reducing wife's attorney fees to a sum certain. C.R.M. 7(a)(11) (2025) ("Appeal of an order or judgment of a district court magistrate may not be taken to the appellate court unless a timely petition for review has been filed and decided by a reviewing court in accordance with these Rules."). Accordingly, we dismiss this portion of husband's appeal.

V. Appellee's Request for Attorney Fees

¶ 44 Wife requests an award of her attorney fees incurred on appeal under C.A.R. 38(b) and 39.1, contending that husband's arguments are contrary to the record and, therefore, we should find husband's

21

appeal frivolous. Although we affirm the district court's permanent orders and dismiss the appeal of the August 2025 order for lack of jurisdiction, we disagree with wife's characterization of the arguments raised as frivolous. Therefore, we decline to award wife her attorney fees. *See* C.A.R. 39.1 ("In its discretion, the appellate court may determine entitlement to and the amount of an award of attorney fees for the appeal . . . .").

## VI. Conclusion

¶ 45 We affirm the judgment and dismiss the appeal with respect to the August 2025 order.

JUDGE KUHN and JUSTICE MARTINEZ concur.